UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ATUL PACHORI**                                                         **CIVIL ACTION**

**VERSUS**                                                              **CASE NO. 21-925**

**NIPPON KAIJI KYOKAI**                                          **SECTION: "G" (3)**
**CORPORATION**

ORDER AND REASONS

In this litigation Plaintiff Atul Pachori ("Plaintiff") alleges that Defendant Nippon Kaiji

Kyokai Corporation ("Defendant") discriminated against him on the basis of his age in violation

of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

("ADEA"), and in violation of Louisiana's Prohibition of Age Discrimination, Louisiana Revised

Statute § 23:312.[1] Plaintiff also alleges that Defendant discriminated against him based on his

national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, *et seq.* ("Title VII") and in violation of Louisiana Employment Discrimination Law,

Louisiana Revised Statute § 23:332.[2] Pending before the Court is Defendant's Motion for Partial

Summary Judgment.[3] Defendant seeks dismissal of Plaintiff's claims of national origin

discrimination under both federal and state law.[4] For the reasons discussed below, Plaintiff has

established a prima facie case for discrimination in compensation. Therefore, Defendant is not

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 20.

[4] *Id.*

1

entitled to summary judgment on the sole issue raised in the motion for partial summary judgment. Accordingly, having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiff filed a Complaint in this Court on May 10, 2021.[5] According to the Complaint, Plaintiff was 67 years old at the time of his termination and he is a person of Indian national origin.[6] Plaintiff alleges that he began working for Defendant on December 1, 2013, as a Principal Surveyor and Lead Auditor in the New Orleans office earning $143,000.00 per year with fringe benefits.[7] Plaintiff alleges that he was an exemplary employee who received no warnings, write-ups, negative comments, or reprimands related to the quality or volume of his work.[8]

Plaintiff alleges that on January 16, 2020, he was notified by letter from Stewart Saedong Lee ("Mr. Lee"), Defendant's Country Manager over U.S. operations, of his termination effective December 31, 2020.[9] On January 20, 2020, Plaintiff sent an email to Mr. Lee pleading to rescind the termination notice.[10] On February 12, 2020, Plaintiff inquired about his termination and was advised by A. Naruse, from Defendant's Human Resources Department, that his termination "is the result of our decent (sic) consideration between Head office and Country Manager."[11]

---

[5] Rec. Doc. 1.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.*

On March 14, 2020, Plaintiff received a fully satisfactory performance review.[12] On June 30, 2020, Plaintiff wrote another letter to Mr. Lee asking for reconsideration of the decision to terminate Plaintiff.[13] Plaintiff filed a charge of discrimination on the basis of age and national origin with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2020.[14] Plaintiff received a right to sue notice from the EEOC on April 28, 2021, and filed the Complaint in this Court on May 10, 2021.[15]

Plaintiff alleges that Defendant discriminated against him on the basis of his age in violation of the ADEA and Louisiana's Prohibition of Age Discrimination.[16] Plaintiff alleges that Defendant terminated him because of his age, as evidenced through the Yearly Management Review's express intention to focus on "employment and education of young surveyors."[17]

Plaintiff also alleges that Defendant discriminated against him based on his national origin in violation of Title VII Louisiana Employment Discrimination Law.[18] Plaintiff alleges that his salary was arbitrarily suppressed over the years by Mr. Lee, based on Plaintiff's Indian national origin.[19] Plaintiff asserts that comparators of Korean national origin received favorable treatment

---

[12] *Id.* at 4.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 4–6.

[17] *Id.* at 5.

[18] *Id.* at 6–7.

[19] *Id.* at 6.

and base salary.[20]  In order to earn the same salary as his Korean comparators and persons of other

national origins working within the United States, Plaintiff alleges that he was forced to work

extensive overtime and conduct substantially more surveys.

On February 22, 2022, Defendant filed the instant motion for partial summary judgment.[21]

Plaintiff filed an opposition on March 1, 2022.[22]  On March 10, 2022, with leave of Court,

Defendant filed a reply in further support of the instant motion.[23]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion for Partial Summary Judgment*

Defendant seeks summary judgment on Plaintiff's claims of national origin discrimination

under both federal and state law.[24]  According to Defendant, Plaintiff cannot establish a prima facie

case for national origin discrimination.[25]  Defendant notes that Plaintiff does not appear to allege

that his termination was in any way related to his national origin, but Plaintiff alleges that he was

paid less than individuals of Korean national origin.[26]  Defendant contends that this allegation is

demonstrably false because the two highest-paid surveyors in 2018 and 2019 were of Indian

national origin and the highest-paid surveyor in 2020 was an individual of Indian national origin.[27]

---

[20] *Id.*

[21] Rec. Doc. 20.

[22] Rec. Doc. 25.

[23] Rec. Doc. 29.

[24] Rec. Doc. 20 at 1.

[25] *Id.*

[26] Rec. Doc. 20-2 at 3.

[27] *Id.*

Because there is no direct evidence of national origin discrimination, Defendant asserts that the analysis must proceed under the *McDonnell Douglas* framework.[28] Defendant asserts that Plaintiff cannot establish a prima facie case for discrimination because he cannot identify a similarly situated non-Indian employee who was treated more favorably than he was.[29] Additionally, Defendant contends that Plaintiff cannot demonstrate that his termination was a pretext for national origin discrimination.[30]

**B.    *Plaintiff's Arguments in Opposition to the Motion for Partial Summary Judgment***

Plaintiff argues that the motion must be denied because it "relies on ranking surveyors based by total compensation—including overtime wages—instead of base salary."[31] Plaintiff contends that "he received discriminatory treatment regarding his base salary compared to [Defendant's] U.S. surveyors of Korean and Japanese national origin."[32] Plaintiff notes that the company is run out of Tokyo, Japan, and Mr. Lee is Korean.[33] Plaintiff compares his base salary to his Korean and Japanese peers: (1) in 2018 Plaintiff ranked sixth out of eight comparators in base salary, earning between 12% and 3% less than his comparators; (2) in 2019 Plaintiff ranked fifth out of seven comparators in base salary, earning between 12% and 3% less than his comparators; and (3) in 2020 Plaintiff ranked sixth out of seven comparators in base salary, earning

---

[28] *Id.* at 6.

[29] *Id.*

[30] *Id.* at 7.

[31] Rec. Doc. 25 at 1.

[32] *Id.* at 3.

[33] *Id.*

between 12% and 1% less than his comparators.[34]  Plaintiff notes that Defendant's motion analyzes Plaintiff's total compensation, but Plaintiff asserts that his earnings were brought into line with the comparators only because he worked longer hours, performed more surveys, and earned more overtime pay.[35]

Plaintiff contends that he has established a prima facie case of discrimination based on his national origin.[36] He is a member of a protected class, who received a lower base salary than his Korean and Japanese comparators for substantially similar work.[37] Plaintiff notes that Defendant offers no legitimate basis for the actual pay disparity.[38] Because Defendant do not allege a legitimate non-discriminatory basis for the base pay disparity, Plaintiff asserts that it fails to shift the burden back to Plaintiff to establish that basis is pretextual.[39]

## C.   *Defendant's Arguments in Further Support of the Motion for Partial Summary Judgment*

In reply, Defendant contends that Plaintiff's total compensation, not just his base salary, must be viewed in light of the total compensation of each comparator.[40] Defendant asserts that

---

[34] *Id.* at 3–4.

[35] *Id.* at 4. Plaintiff also argues that his comparators should include surveyors from offices other than the New Orleans office. *Id.* at 5–7. Plaintiff contends that the surveyor jobs are identical and interchangeable between Defendant's offices in the U.S. *Id.* at 7. Since the Regional Manager has ultimate authority over salary and continued employment, Plaintiff contends that he is similarly situated to the surveyors of Korean and Japanese national origin who did not work out of the New Orleans office. *Id.* Defendants do not dispute that these are appropriate comparators. *See* Rec. Docs. 20, 29. Accordingly, the Court does not reach this issue.

[36] Rec. Doc. 25 at 7.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 29 at 2.

Plaintiff cannot overcome his burden to demonstrate that his total compensation was more than all but one of his Korean comparators in 2020, and more than all of his Korean comparators in 2018 and 2019.[41] Defendant contends that the highest paid surveyor in 2018 (both in base salary and total compensation) was of Indian national origin.[42] In addition, Defendant asserts that the highest paid surveyor in total compensation in 2019 and 2020 was of Indian national origin, and the base salary of that Indian individual was only 1.97% less than the only Japanese comparator.[43] Thus, Defendant argues that Plaintiff cannot demonstrate a prima facie case of national origin discrimination.[44]

While Defendant acknowledges that it has not pointed to a particular formula to calculate compensation, Defendant asserts that review of the compensation information shows that it was based on years of experience and cost of living in the areas where surveyors were based.[45] Defendant notes that it paid a higher base salary to a Japanese and South Korean surveyor who had more years of experience than Plaintiff.[46] Additionally, Defendant contends that it paid a higher base salary to the South Korean surveyor with less experience than Plaintiff who lived in Seattle, as well as the South Korean and Indian surveyors based in New York, because the cost of living in Seattle and New York is among the highest in the country.[47] Therefore, Defendant

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 2–3.

[44] *Id.* at 3.

[45] *Id.*

[46] *Id.*

[47] *Id.*

7

concludes that the actual numbers show that it did not discriminate against Plaintiff on the basis of his national origin.[48]

### III. Legal Standards

*A.*     ***Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[50] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[51] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[52] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[53]

---

[48] *Id.* at 4.

[49] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[50] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[51] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[52] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[53] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[54] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[55] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[56] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[57] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[58] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[59] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[60] Ultimately, summary judgment

---

[54] *Celotex*, 477 U.S. at 323.

[55] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[56] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[57] *Little*, 37 F.3d at 1075.

[58] *Anderson*, 477 U.S. at 248.

[59] *Little*, 37 F.3d at 1075.

[60] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[61]

**B.    *Employment Discrimination***

Plaintiff brings claims of national origin discrimination under Title VII and Louisiana Revised Statute § 23:332. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on sex, race, color, religion, and national origin in employment decisions.[62] Similarly, Louisiana Revised Statute § 23:332 prohibits employers from intentionally discriminating based on race, color, religion, sex, or national origin.[63] "Because the Louisiana employment discrimination statute is similar to Title VII, courts have held that claims under the statute may be analyzed according to applicable federal precedents."[64]

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII.[65] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.[66] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[67] If the plaintiff can establish a prima facie case, the burden will shift to the defendant

---

[61] *Armstrong v. City of Dall.*, 997 F.2d 62 (5th Cir. 1993).

[62] 42 U.S.C. § 2000(e) *et seq.*, as amended.

[63] La. Rev. Stat. § 23:332(B).

[64] *Landreneau v. Baker Hughes A G E Co., LLC.*, 801 F. App'x 919, 920 (5th Cir. 2020) (internal citations omitted).

[65] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014)).

[66] *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[67] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus &*

to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[68] The defendant must point to admissible evidence in the record,[69] but the burden is one of production, not persuasion.[70] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[71] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[72]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[73] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[74]

## IV. Analysis

Plaintiff, a 67-year-old male of Indian national origin, asserts that Defendant discriminated against him in violation of Title VII and Louisiana law by paying Plaintiff a lower base salary than

---

*Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

[68] *Id.*

[69] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

[70] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[71] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[72] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[73] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[74] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

comparators of Japanese and Korean national origin.[75] "To make out a prima facie case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility."[76] Under the *McDonnell Douglas* framework, "'[o]nce shown, a plaintiff's prima facie case creates an inference of . . . discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason' for the pay disparity."[77] If the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual.[78]

Defendant does not dispute that Plaintiff is a member of a protected class.[79] Defendant argues that Plaintiff was not paid less than non-members for substantially the same responsibility.[80] Defendant asserts that Plaintiff was paid more than all but one of his Korean comparators in 2020 and more than all of his Korean comparators in 2018 and 2019.[81] Plaintiff does not dispute that his take-home pay, including overtime, was more than his Korean and Japanese comparators.[82] Nevertheless, Plaintiff contends that he has stated a prima facie claim

---

[75] Rec. Doc. 1 at 1.

[76] *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)).

[77] *Id.* (quoting *Ross v. University of Tex. at San Antonio*, 139 F.3d 521, 524 (5th Cir. 1998)).

[78] *Id.*

[79] *See* Rec. Doc. 20-2 at 6.

[80] *Id.*

[81] *Id.*

[82] *See* Rec. Doc. 25.

because his base pay was less than his Korean and Japanese peers.[83]  In reply, Defendant contends that under Title VII Plaintiff's total compensation, not just his base salary, must be viewed in light of the total compensation of each comparator.[84]

Defendant relies on a regulation defining "wages" under the Equal Pay Act ("EPA"). The regulation defines wages to include "all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name."[85]  The regulation explains that "premium payments for work on Saturdays, Sundays, holidays, regular days of rest or other days or hours in excess or outside of the employee's regular days or hours of work are deemed remuneration for employment and therefore wage payments that must be considered in applying the EPA." Courts have recognized that Title VII, which mirrors the EPA, also requires consideration of all compensation.[86]

Plaintiff has presented evidence showing that he received a lower base pay than his Korean and Japanese comparators. In 2018, Plaintiff ranked sixth out of eight comparators of Japanese and South Korean descent in base salary, earning between 12% and 3% less than his comparators.[87] In 2019, Plaintiff ranked fifth out of seven comparators of Japanese and South Korean descent in

---

[83] *Id.* at 3–4.

[84] Rec. Doc. 29 at 2.

[85] 29 C.F.R. § 1620.10.

[86] *Fields v. Austin*, No. 9-13-CV-250, 2014 WL 11332260, at *3 (E.D. Tex. Dec. 10, 2014), *aff'd sub nom. Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830 (5th Cir. 2015) (citing *Uviedo*, 738 F.2d at 1431).

[87] Rec. Docs. 25-2, 25-3.

base salary, earning between 12% and 3% less than his comparators.[88] In 2020, Plaintiff ranked sixth out of seven comparators of Japanese and South Korean descent in base salary, earning between 12% and 1% less than his comparators. Therefore, Plaintiff has established a prima facie case of discrimination in compensation.[89]

The burden then shifts to Defendant to show a legitimate non-discriminatory reason for the pay disparity. In the motion for partial summary judgment, Defendant argued only that there was not a pay disparity, and it did not offer any reason for the disparity. In the reply brief, Defendant appears to suggest that the pay disparity was based on the fact that the comparators had more experience or lived in higher cost-of-living areas. Because this argument was raised for the first time in the reply brief and Plaintiff did not have an opportunity to respond, the Court will not consider this issue.[90] Defendant is not entitled to summary judgment on the sole issue raised in the motion for partial summary judgment. Plaintiff has established a prima facie case for discrimination in compensation. Accordingly,

---

[88] *Id.*

[89] *Id.*

[90] *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment[91] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 6th day of April, 2022.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[91] Rec. Doc. 20.